KAREN A. OVERSTREET
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Rm. 6301
Seattle, WA 98101-1271
(206) 370-5330

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re | ) |
| | ) Chapter |
| NORMAN COHEN, | ) |
| | ) Bankruptcy No. 05-26783 |
| | ) |
| Debtor. | ) |
| _____ | ) Adversary No. 07-1325 |
| | ) |
| RALPH CARR, | ) |
| | ) |
| Plaintiff, | ) **MEMORANDUM DECISION** |
| v. | ) |
| | ) **(Not for Publication)** |
| NORMAN COHEN, | ) |
| | ) |
| Defendant(s). | ) |
| | ) |
| _____ | ) |

This matter came before the Court for trial on February 4, 2010. The Court heard evidence and closing argument from both parties then took the matter under advisement.

**I. Summary of Action**

Plaintiff, Ralph Carr, timely filed this action seeking an order excepting his claim against the defendant/debtor, Norman Cohen, from discharge pursuant to Bankruptcy Code §§ 523(a)(4) and 523(a)(6).[1] On summary judgment, I dismissed Mr. Carr's

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. and to the Federal Rules of Bankruptcy Procedure, Rules 1001

ORDER - 1

Section (a)(4) claim, leaving only the Section 523(a)(6) claim for trial.

## II. Findings of Fact

Mr. Cohen filed a petition under Chapter 7 of the Bankruptcy Code on October 13, 2005. Mr. Carr was not listed as a creditor in the case. The case proceeded as a no asset case and an order of discharge was entered on February 6, 2006. The case was closed on February 14, 2006.

Prior to filing bankruptcy, Mr. Cohen was the subject of a Washington State Bar Association complaint initiated by Mr. Carr related to actions taken by Mr. Cohen as Mr. Carr's legal counsel between 1998 and 2000. On March 23, 2006, the Washington State Supreme Court entered an order which disbarred Mr. Cohen from the practice of law and ordered him to pay restitution to Mr. Carr in the amount of $8,118.75 plus interest at the rate of 12% per annum from December 12, 2000 until the date of payment (the "Disbarment Order"). Plaintiff filed this action to except that debt from discharge.

On March 21, 2007, after the bankruptcy case had been closed, Mr. Carr filed an action in the King County Superior Court which sought a judgment against Mr. Cohen in the same amount as the restitution ordered in the Disbarment Order, plus attorneys fees of $1,500. Mr. Cohen's answer in that action asserted the discharge in bankruptcy. Mr. Carr then moved to reopen the bankruptcy case to assert his claim against Mr. Cohen

---

*et seq.*

ORDER - 2

and to obtain a judicial determination that the claim was nondischargeable. Over Mr. Cohen's objection, I reopened the case and set a deadline for Mr. Carr to file this adversary proceeding.

Mr. Cohen was admitted to the practice of law in the State of Washington on September 20, 1965. In 1998, Mr. Carr hired Mr. Cohen to represent him in an employment action against Marathon Communications ("Marathon"), and on April 22, 1998, Mr. Cohen filed an action against Marathon and others (the "Marathon defendants") on behalf of Mr. Carr. A scheduling order was issued in connection with the case which set a trial date of September 13, 1999. At a pretrial conference on July 23, 1999, without conferring with Mr. Carr, Mr. Cohen agreed to transfer the case to mandatory arbitration, which was set for December 9, 1999.

Mr. Cohen failed to communicate with Mr. Carr before the arbitration and did not contact any of the witnesses whose names had been given to him by Mr. Carr. Mr. Cohen failed to file the Pre-Hearing Statement of Proof required by Rule 5.2 of the Mandatory Arbitration Rules (MAR) within fourteen days prior to the arbitration, prompting the Marathon defendants to move, as permitted by the same rule, to bar Mr. Carr from presenting any evidence at the arbitration "except with the permission of the arbitrator." Mr. Cohen admitted at trial that at this time, he was depressed and was having trouble executing his tasks as a lawyer, particularly with regard to Mr. Carr's arbitration. He testified that he had been suffering from depression for a long

ORDER - 3

period of time, which resulted in his complete debilitation at times.[2] Mr. Cohen knew that because of his mental state he was not able to perform the services required as Mr. Carr's counsel in the arbitration. He also knew that he had a lengthy history of prior disciplinary action, including a six-month suspension in 2003, a censure in 1972, a reprimand in 1973 and four admonitions in 1990, all of which involved lack of diligence and/or failure to communicate with his clients. *See* Ex. 8, Findings of Fact, Conclusions of Law and Hearing Officer's Recommendation ("Hearing Officer's Findings"), ¶ 48. Mr. Cohen knew that another complaint to the bar would likely result in his suspension or disbarment.

With knowledge that he was completely unprepared for the arbitration and that his client would likely be barred from offering evidence at the arbitration, Mr. Cohen called Mr. Carr the night before the arbitration and lied to him, telling him that the arbitration had been cancelled because the arbitrator was sick.[3] Mr. Carr had no reason to believe otherwise, so he did not attend the scheduled arbitration and instead awaited word from Mr. Cohen as to what the next step in the litigation would be.

Again without consulting with or getting permission from

---

[2] Mr. Cohen produced no doctor's records showing any psychiatric care, however, and testified that at this time, he was only under the care of an internist.

[3] In the disciplinary proceedings, the Hearing Officer found that Mr. Cohen had claimed that the opposing counsel was sick; but at trial, Mr. Cohen testified that he told Mr. Carr the arbitrator was ill. *See* Ex. 8, Hearing Officer's Findings, ¶ 19.

ORDER - 4

Mr. Carr, in a conference call with opposing counsel and the arbitrator the day before the arbitration, Mr. Cohen stipulated to the entry of an award in the Marathon defendants' favor as long as the award contained no finding that Mr. Carr failed to participate in the arbitration. Mr. Cohen, as an experienced practitioner, knew that if Mr. Carr failed to participate in the arbitration, he would lose his right to *de novo* review by the superior court. The arbitrator entered an award in favor of the Marathon defendants on December 9, 1999.

Mr. Cohen then filed a request for trial *de novo* on Mr. Carr's behalf and a trial was eventually set for November 6, 2000. Mr. Cohen knew that under MAR 7.3 an award of costs and attorneys' fees in favor of the Marathon defendants would be mandatory against Mr. Carr if his client was not successful in proving his case at the trial. Mr. Cohen never advised Mr. Carr of this risk and once again failed to follow up on Mr. Carr's updated list of the witnesses, which Mr. Carr believed were critical to his case, and to prepare for the trial. Mr. Cohen also received prior to trial two settlement offers from the Marathon side to which he did not respond.

Mr. Cohen failed to comply with the pretrial order issued by the state court and Marathon's counsel moved to exclude Mr. Carr from presenting evidence at trial and to dismiss the case with prejudice. Mr. Carr had no knowledge of any of these proceedings and was also still ignorant of what had happened at the arbitration. Mr. Cohen admitted at trial that during this period of time, he knew that his mental state prevented him from being

ORDER - 5

effective as Mr. Carr's counsel.  Instead of so informing Mr. Carr, so that he could obtain substitute counsel, Mr. Cohen filed a motion to withdraw on short notice on November 1, 2000. Mr. Cohen did not advise Mr. Carr of this motion.  It was only by happenstance that Mr. Carr learned of it when he called Mr. Cohen's office the day before the trial and was advised by Mr. Cohen's secretary that Mr. Cohen was in the process of withdrawing from the case.  By then, it was too late for Mr. Carr to obtain substitute counsel to represent him at the trial.

At the trial, the judge denied Mr. Cohen's motion to withdraw, granted the Marathon defendants' motion to exclude evidence, and permitted only limited testimony from Mr. Carr. After hearing this limited evidence, the judge entered a judgment in the Marathon defendants' favor and ordered Mr. Carr to pay $8,118.75 in attorneys' fees incurred by the defendants.

Mr. Carr filed a complaint against Mr. Cohen with the Washington State Bar Association and in the disciplinary proceedings that followed, the Hearing Officer found that "[Mr. Cohen] knowingly failed to perform services for Mr. Carr" and that "[Mr. Cohen's] inaction ...caused serious injury to Mr. Carr."  Ex. 8, Hearing Officer's Findings, ¶¶ 46, 47.  The disciplinary board adopted the Hearing Officer's findings and recommendation that Mr. Cohen be disbarred, and the Washington State Supreme Court affirmed this in the Disbarment Order entered on March 23, 2006.

ORDER - 6

## III. CONCLUSIONS OF LAW

**A. Plaintiff's Claim is Not Barred by the Statute of Limitations.**

Mr. Cohen argues that if Mr. Carr is asserting a tort claim, that claim is barred by the three-year statute of limitations in RCW 4.16.080 (injury to person or a person's rights) or RCW 4.16.100 (libel, slander, assault). Mr. Carr relies on the Disbarment Order and argues that he is not subject to any statute of limitation.

Section 523(a)(6) provides that an individual is not discharged from any "debt" "for willful and malicious injury by the debtor to another entity...." Under Section 101(12) the term "debt" means liability on a claim. Claim is in turn defined in Section 101(5) as a "right to payment, whether or not such right is reduced to judgment...." CR 54 of the Washington Court rules provides that "A judgment is the final determination of the rights of the parties in the action and includes a decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge...." Based upon these authorities and the Disbarment Order, I conclude that Mr. Carr has a "claim" against Mr. Cohen for $8,118.75 plus interest, and that this claim was reduced to judgment. Ex. 8, Disbarment Order. Accordingly, Mr. Carr's claim is not barred by the state statute of limitations pertaining to tort claims.

**B. Nondischargeability under Section 523(a)(6).**

Exceptions to discharge are strictly construed against an objecting creditor and in favor of the debtor. *Snoke v. Riso (In*

ORDER - 7

*re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). The burden of proof is on Mr. Carr to prove each element of Section 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

    1.   <u>The Test for Willfulness</u>.

The determination of a "willful and malicious" injury requires a two-step analysis. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 831 (9th Cir. BAP 2006). The first step is to determine whether there was a "willful" injury, which "triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). A willful injury is deliberate, and it is "one which, in fact, targets a particular individual for harm and in so doing, injures him." *Blandino v. Bradshaw (In re Bradshaw)*, 315 B.R. 875, 886 (Bankr. D. Nev. 2004). The Ninth Circuit has held that the test for willfulness is subjective: "[Section] 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). *Carrillo* made it clear that the court must apply a subjective analysis to both disjunctive parts of the test. Thus, the debtor must have the "subjective intent to harm, or a subjective belief that harm is substantially certain." *Id*. at 1144. Using car accidents as an example, the court instructs that if the defendant intended to crash the car into a third party, the test for

ORDER - 8

nondischargeability is met, whereas if the defendant was acting recklessly but hoped he could still navigate safely without hitting a third party, the resulting claim is dischargeable. *Id.* at 1146, fn. 6. Another court explains that conduct which can result in more than one outcome (dischargeable) must be distinguished from conduct which can only result in harm to the plaintiff (nondischargeable). *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447 (Bankr. N.D. Cal. 2005).

In a recent Ninth Circuit decision, *Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008), the court further clarified that tortious conduct, as opposed to an intentional breach of contract, is required to support nondischargeability under Section 523(a)(6). *See also, Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001), *cert. denied,* 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001). The court relied on the Restatement (Second) of Torts, § 8A, cmt. b (1965), which provides: "If the actor knows that the consequences are certain, or substantially certain to result from his act, and he still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.* at 1042. More importantly, the court held, in the context of analyzing the intentional breach of a contract at issue in the case, that the conduct must be tortious under the applicable state law. The court stopped short, however, of holding that the plaintiff must have actually filed and prosecuted a tort claim to judgment in the state court.

Under Washington law, a claim against an attorney for malpractice can sound in tort or in contract. *Davis v. Davis*

ORDER - 9

*Wright Tremaine, L.L.P.*, 103 Wash.App. 638, 14 P.3d 146 (Wash.App. Div. 1, 2000). A lawyer has an implied duty to perform legal services at an acceptable level of competence on behalf of his or her client, whether or not there is a written agreement to that effect. *Id*. at 651. In this case, there is no evidence of any written contract for services between Mr. Carr and Mr. Cohen. Neither the complaint filed herein nor any of the pleadings filed in the state court or in the disciplinary proceedings mention any contract. Instead, these pleadings all sound in tort in that Mr. Cohen failed to perform his implied duty to provide competent legal services to Mr. Carr. Mr. Cohen admitted at trial that the services he performed for Mr. Carr were not "anywhere near" the standard of competence required.

I conclude that Mr. Cohen's conduct meets the test for willful conduct under Section 523(a)(6) despite his testimony that he did not intend to injure Mr. Carr. Mr. Cohen's conduct went beyond mere negligence and recklessness. In failing to adequately prepare for the initial arbitration of Mr. Carr's claims, Mr. Cohen's actions could have produced different results. Even though he was unprepared, he could have attended the arbitration with Mr. Carr and asked for a continuance given his admitted mental incapability of performing as Mr. Carr's attorney. He could have advised Mr. Carr to obtain substitute counsel. Instead of engaging in these alternatives, which would have limited his liability to negligence, Mr. Cohen took the tortious step of lying to Mr. Carr and telling him not to attend the arbitration because the arbitrator was sick. Mr. Cohen knew,

ORDER - 10

however, that if Mr. Carr did not attend the arbitration, Mr. Carr was certain to suffer harm. Without Mr. Carr's consent or knowledge, Mr. Cohen stipulated to an award in favor of the Marathon defendants with the proviso that Mr. Carr would not be deemed to have failed to participate in the arbitration. Mr. Cohen testified that he did not intend to harm Mr. Carr and obtaining this proviso in the stipulation was his way of helping Mr. Carr. All of the evidence convinces me, however, that the actions of Mr. Cohen from this point on were designed to cover up his failings and to avoid further trouble with the bar.

Once Mr. Cohen requested trial *de novo*, he knew with certainty that Mr. Carr would suffer a judgment for the Marathon defendants' costs and fees if Mr. Carr was not successful at the trial. Mr. Cohen had another chance at this point to set things right. Instead, he continued the deception he started with the arbitration by continuing to ignore his obligations to prepare the case without communicating his inadequacies to Mr. Carr, and by not telling Mr. Carr that he intended to withdraw from the case shortly before trial. Mr. Cohen's continued noncompliance and noncommunication furthered the deception to the inevitable day of trial when Mr. Cohen knew that because of his inaction, Mr. Carr was certain to be harmed.

2. <u>Maliciousness</u>.

The second step of the § 523(a)(6) inquiry is to determine whether the defendant's conduct was "malicious." *Khaligh*, 338 B.R. at 831. The relevant test for "malicious" conduct is: (1) a wrongful act; (2) done intentionally; (3) which necessarily

ORDER - 11

causes injury; and (4) which is done without just cause or excuse. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001), *cert. denied,* 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001). It can be inferred that a "willful" injury meets these requirements; in particular, "evidence in the record of specific intent to injure" negates just cause or excuse. *Khaligh*, 338 B.R. at 831.

Mr. Cohen committed multiple acts of deception in connection with his failure to adequately represent Mr. Carr. These acts were wrongful, done intentionally, and necessarily resulted in harm to Mr. Carr. Mr. Cohen did not offer any just cause or excuse for his conduct. To the contrary, he admitted that his conduct was inexcusable and shameful. Therefore, I conclude that Mr. Carr has met the second part of the test for nondischargeability under Section 523(a)(6).

**CONCLUSION**

The court finds that Mr. Carr has met his burden of proving by a preponderance of the evidence that all of the elements of Section 523(a)(6) have been met and that he is entitled to an order determining his claim in the amount of $8,118.75, plus interest at 12% per annum from December 12, 2000 to the date of judgment, nondischargeable.

Dated this 10th day of February, 2010.

_____
Karen A. Overstreet
Bankruptcy Judge

ORDER - 12